IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KIESHA CHEATHAM,

      Plaintiff,

    v.

DEKALB COUNTY, GEORGIA,

      Defendant.

CIVIL ACTION FILE NO.

1:14-CV-01887-WSD-JFK

**FINAL REPORT AND RECOMMENDATION**

Plaintiff Kiesha Cheatham filed the above-styled employment discrimination action against Defendant DeKalb County, Georgia, on June 17, 2014. [Doc. 1]. Plaintiff Cheatham alleges that Defendant DeKalb County subjected her to retaliation and discrimination on the basis of her gender. [Id.]. Plaintiff's retaliation claim is based on Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and her gender discrimination claims are based on Title VII and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution brought pursuant to 42 U.S.C. § 1983. [Doc. 1, Counts 1-3]. Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on Plaintiff's

claims based upon the pleadings, statements of material facts, exhibits, and discovery materials submitted to the court.  [Doc. 24].

## I.    Facts

The court's local rules: (1) require the movant for summary judgment to provide a "separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried"; (2) require the respondent to provide responses to each of the movant's numbered undisputed material facts; and (3) state that the movant's facts will be deemed admitted absent proper refutation.  LR 56.1 B.(1), (2), N.D. Ga.  Specifically, the local rules require, along with a responsive brief, a response to the movant's statement of undisputed facts –

(1)    This response shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts.

(2)    This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1).

LR 56.1 B.(2)a., N.D. Ga.  Compliance with Local Rule 56.1 is the "only permissible way . . . to establish a genuine issue of material fact" in response to the moving party's assertion of undisputed facts.  Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008).  "The proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement."  Id.  The Court must then review the movant's statement of undisputed facts and ensure – by, "[a]t the least, . . . review[ing] all of the evidentiary materials submitted in support of the motion for summary judgment" – that the movant's statement of facts is in fact supported.  Id. at 1269 (quoting United States v. One Piece of Real Property, 363 F.3d 1099, 1101-02 (11th Cir. 2004)) (internal quotation marks omitted).

In the present case, although Plaintiff has responded to Defendant's statement of material facts and has offered her own statement of facts, Plaintiff has often failed to cite to evidence in the record.  [Docs. 27, 28].  Instead, Plaintiff has repeatedly cited to statements made in her complaint.  [Id.].  The Local Rules, however, provide: "The court will not consider any fact: . . . (b) supported by a citation to a pleading rather than to evidence . . . ."  L.R. 56.1B.(1)b., N.D. Ga.  Making matters even more difficult

3

for the court is the fact that when Plaintiff has cited to the record, the cited evidence often does not support the assertions she has made. [Docs. 27, 28]. Likewise, in her response brief filed in opposition to Defendant's summary judgment motion, Plaintiff has often failed to point to specific evidence in support of her arguments, or she has cited to evidence that is not relevant to her arguments. [Doc. 27]. For example, in the section of Plaintiff's response brief labeled "Statement of Facts," there is not a single citation offered in support of any of her assertions. [Doc. 27 at 1-3]. The assertions and denials made by Plaintiff that are not supported with citation to relevant portions of the record will not be considered. The court has reviewed the evidentiary material submitted by Defendant in support of the undisputed facts to ensure that those facts are supported by the record. See Reese, 527 F.3d at 1269. In accordance with the foregoing principles, the following facts are deemed to be true for the limited purpose of evaluating Defendant's motion [Doc. 24] for summary judgment.

Plaintiff Kiesha Cheatham is an African-American female who was born in 1970. [Defendant's Statement of Material Facts ("DSMF") ¶ 1]. In August 2008, Plaintiff Cheatham was hired by DeKalb County Fire Rescue ("DCFR") as a Fire Medic. [DSMF ¶ 2]. Plaintiff was promoted to the rank of Fire Medic II effective November 13, 2010. [DSMF ¶ 3].

4

On October 16, 2012, while eating a meal at DCFR Fire Station 1 with her co-worker and partner Emergency Medical Technician ("EMT") Christopher Roberts, Plaintiff witnessed Roberts having an allergic reaction to onions.  [DSMF ¶ 6]. Captain Matthew Robison, Fire Apparatus Operator  ("FAO") Bradley Catroneo, and Captain James Damico were also present during this incident at the table with Plaintiff and Roberts.  [DSMF ¶ 7].  Plaintiff did not provide any assistance to EMT Roberts. Instead, Robison and EMT Michael Gales, who entered the room while Roberts was having the allergic reaction, came to Roberts' aid and administered epinephrine to him. [DSMF ¶ 8].

On October 28, 2012, approximately two weeks after the incident involving Roberts' allergic reaction, Plaintiff was transferred from Fire Station 1 to Fire Station 17.  [DSMF ¶ 13].  During October 2012, Plaintiff's chain of command at DCFR's Fire Station 1 was the following: Captain/Stations Officers: Matthew Robison and James Damico;  Battalion Chief: Douglas Brown;  Acting Assistant Chief: Christopher Morrison;  Interim Deputy Chief: Norman Augustin;  Fire Chief/Director: Edward O'Brien.  [DSMF ¶ 27].  From the end of October 2012 through the end of August 2013, when Plaintiff resigned from her employment with DCFR, her chain of command at Fire Station 17 was the following: Captain/Stations Officer: William

5

Mitchell; Battalion Chief: Vincent Jeter; Acting Assistant Chief: Christopher Morrison; Interim Deputy Chief: Norman Augustin; Fire Chief/Director: Edward O'Brien.  [DSMF ¶ 28].

As a result of the incident involving EMT Roberts' allergic reaction to onions on October 16, 2012, DCFR's Internal Affairs Unit and the DeKalb County District Attorney's Office began an investigation into the incident.  [DSMF ¶ 9].  The investigation was centered on whether someone willfully placed onions in the meal knowing that Roberts was allergic to onions and whether proper protocols were followed after he was administered epinephrine.  [DSMF ¶ 10].  Plaintiff provided written statements to DCFR's Internal Affairs Unit on October 25 and November 30, 2012.  [DSMF ¶ 11].

In an investigative report dated December 13, 2012, DCFR's Internal Affairs Unit sustained a violation of falsification of records and neglect of duty against Plaintiff.  [Plaintiff's Deposition ("Pla. Dep."), Ex. 13 at 27-30].  The investigative report stated that Plaintiff had made misleading statements with the intent to deceive which resulted in the falsification of DCFR records.  [Id.].  According to the report, Plaintiff had falsified pharmaceutical documents by identifying a vial of epinephrine as being damaged rather than showing that it had been used to treat Roberts.  [Id. at 5-

6

21, 24-30].    But the investigation concluded that Plaintiff had falsified the pharmaceutical documents only after being instructed to do so by Captain Robison. [Id. at 27-30].   DCFR's Internal Affairs Unit, nevertheless, found that Plaintiff Cheatham "could have contacted and requested guidance from her next immediate supervisor (Brown) to advise him of the unreasonable and unethical order" issued by Robison.  [Id.].

Plaintiff testified that after she transferred to Fire Station 17 in October 2012, she was subjected to a gender-based hostile work environment.  [Pla. Dep. at 62-65]. According to Plaintiff, two male firefighters, on more than one occasion, defecated in the women's restroom and did not flush the toilet.  [Id.].  Plaintiff was asked and testified to the following:

> Q.  [W]hat led you to believe that these were the two individuals that were engaging in this alleged conduct?
>
> A.  Because there were times I couldn't get in the bathroom because they were there and I was told to use the men's facility. . . .
>
> Q.  How do you know it was them?
>
> A.  Because I would be standing at the counter and the way the station is set up, the counter is here.  When you come in, the women's facility is to the right and men's to the left.  So I'm standing at the counter because I have to use the facility and I see them when they come out.

7

> Q. Okay. And your allegation about them refusing to flush to taunt you, how do you know that?
>
> A. Because there would be feces in the toilet when I go in.
>
> Q. How do you know it was intended to taunt you?
>
> A. Because comments would always be made the only reason why a woman is at the station is to cook and do my clerical. Because I would place a sign on the door saying, a typed sign saying woman on shift today. I would turn the sign around because there's one that says male and female. I would turn it around to read female. I was the only female at the station, and I've had this conversation with them prior to more than once.

[Pla. Dep. at 63-65]. Plaintiff testified that it was Captain Mitchell who stated that the "only reason why a woman is in the fire service is to cook and do clerical work." [Id. at 65].

On December 10, 2012, Plaintiff received a written counseling for excessive absenteeism/abuse of sick leave. [DSMF ¶ 14]. Plaintiff alleges that while she worked at Station 17, she was denied requests for time off while male medics were given leave. [Plaintiff's Statement of Material Facts ("PSMF") ¶ 13; Pla. Dep. at 65-67]. On January 20, 2013, Plaintiff received a written counseling letter for neglect of duty stemming from a violation of DCFR's chain of command policy. [DSMF ¶¶ 15, 29; Pla. Dep. at 48, Ex. 9]. In the letter, Edward O'Brien, the Director/Fire Chief of

8

DCFR, wrote, "On October 26, 2012, you violated the chain of command against the advice of your station officer. After speaking to your station officer, you went directly to speak to the Operations Deputy Chief; therefore, breaking the chain of command." [Pla. Dep. at 48, Ex. 9]. Plaintiff, however, testified that she got permission from her immediate supervisor, Captain Robison, to talk to the Operations Deputy Chief. [Pla. Dep. at 47-48].

Plaintiff testified that she filed "numerous grievances . . . [d]uring the time frame of [or] after the onion incident." [Pla. Dep. at 58, 59]. Plaintiff alleges that on February 1, 2013, she had a meeting with Fire Chief Edward O'Brien and that he allegedly told her, "I am going to give the grievance back to you and let you decide on what to do about it because if I go deeper into it, [you] could be suspended for 30 days or worse. I'll let you decide. I took it easy on you because you have not been in any trouble before." [Pla. Dep. at 58-59; PSMF ¶ 8].

Plaintiff testified that she filed a complaint of discrimination with DeKalb County on February 21, 2013, but, according to Plaintiff, the County failed to respond to her complaint. [Pla. Dep. at 61-62; PSMF ¶ 9]. On March 14, 2013, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission

AO 72A
(Rev.8/82)

("EEOC").[1]   [DSMF ¶ 17].  Plaintiff alleged in the charge that she had been subjected to retaliation and discrimination on the basis of her sex and race.   [Pla. Dep. at 69, Ex. 12].

On August 21, 2013, Plaintiff resigned from her employment with DCFR. [DSMF ¶ 3].  The same month, Plaintiff took another full-time salaried position as Shift Captain for an ambulance company, American Medical Response, earning a yearly salary of $56,000.00 with benefits.  [DSMF ¶ 4].  For calendar year 2012, Plaintiff earned a gross wage of $45,228.03 from her employment with DeKalb County.  [DSMF ¶ 30].  Plaintiff filed the above-styled complaint in this court against DeKalb County on June 16, 2014.  [Doc. 1].

Additional facts will be set forth as necessary during discussion of Plaintiff's claims.

## II.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a)

---

[1]DCFR maintains a non-discrimination and anti-harassment employment policy that allows employees to report incidents of harassment, discrimination, and retaliation. [Affidavit of Darnell Fullum ("Fullum Aff.") ¶ 4, Ex. 5; DSMF ¶ 21].

10

(amended 2010). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. See Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).

The movant bears the initial burden of asserting the basis of his motion, and that burden is a light one. See Celotex, 106 S. Ct. at 2553. The movant is not required to negate his opponent's claim. See id. Rather, the movant may discharge this burden merely by "'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 2554.

When evaluating a motion for summary judgment, the court must view the evidence and factual inferences in the light most favorable to the nonmoving party. See Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1309 (11th Cir. 2001). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v.

11

Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  Instead, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor."  Fickling v. United States, 507 F.3d 1302, 1304 (11th Cir. 2007) (citing Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)).

The court will apply these standards in ruling on Defendant's motion for summary judgment.

## III.   Discussion

Plaintiff Kiesha Cheatham alleges that Defendant DeKalb County subjected her to retaliation and gender discrimination while she was employed by DCFR.  Plaintiff's complaint contains three counts.  Count One is a Title VII claim for retaliation.  Count Two contains claims for gender-based disparate treatment and hostile work environment based on Title VII.  Count Three is a claim for gender discrimination alleging a violation of the Equal Protection Clause brought pursuant to 42 U.S.C. § 1983.  [Doc. 1, Counts 1-3; DSMF ¶ 5; Plaintiff's Response to DSMF ¶ 5].

### A.   Title VII Retaliation Claim

Title VII acts to shield employees from retaliation for certain protected practices. Specifically, the statute provides, in pertinent part:

12

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).   In University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517, 2534 (2013), the Supreme Court held that a plaintiff bringing a Title VII retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."  The Eleventh Circuit has held that the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817, 1824-25 (1973), continues to apply after Nassar.  See Mealing v. Georgia Dep't of Juvenile Justice, 564 Fed. Appx. 421, 427 n.9 (11th Cir. 2014). Under this framework, the allocation of burdens and order of presentation and proof are as follows: (1) the plaintiff has the burden of proving a *prima facie* case of retaliation; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden (of production) shifts to the defendant to articulate some legitimate, non-retaliatory reason for the action taken against the employee; and (3) should the defendant carry this burden, the plaintiff must have an opportunity to prove that the legitimate reason

13

offered by defendant was a pretext for retaliation.  See McDonnell Douglas, 93 S. Ct. at 1824-25.

To establish a *prima facie* case of retaliation under Title VII, an employee must prove that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action.  See Mealing, 564 Fed. Appx. at 427; Bryant v. Jones, 575 F.3d 1281, 1307-08 (11th Cir. 2009) (citations omitted).  The first *prima facie* element requires Plaintiff to show that she engaged in protected expression, two forms of which are recognized by Title VII.  "An employee is protected from discrimination if (1) '[she] has opposed any practice made an unlawful employment practice by this subchapter' (the opposition clause) or (2) '[she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter' (the participation clause)."  Clover v. Total System Services, Inc., 176 F.3d 1346, 1350 (11th Cir. 1999) (quoting 42 U.S.C. § 2000e-3(a)).  Plaintiff argues that she is able to establish the first *prima facie* element because she "participated in the investigation" into the October 2012 incident involving EMT Christopher Roberts' allergic reaction to onions.  [Doc. 27 at 21].  The court finds that Plaintiff's participation in the investigation does not constitute activity protected under Title VII.

"The participation clause covers participation in 'an investigation . . . under this subchapter,' that is, an investigation under subchapter VI of Chapter 21 of Title 42 (42 U.S.C. §§ 2000e–2000e–17)." EEOC v. Total System Services, Inc., 221 F.3d 1171, 1174 (11th Cir. 2000) (quoting 42 U.S.C. § 2000e–3(a)). The participation "clause protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC; it does not include participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC." Id. (citation omitted). Plaintiff argues that she was subjected to retaliatory actions that occurred "after [she] participated in the investigation regarding her coworker." [Doc. 27 at 21]. However, as Plaintiff acknowledges, the investigation was an internal, in-house investigation conducted by DCFR's Internal Affairs Unit and the DeKalb County District Attorney's Office. [DSMF ¶ 9; Plaintiff's Response to DSMF ¶ 9]. The investigation was in no way related to the filing of a formal EEOC charge. Furthermore, the investigation had nothing to do with any allegations of discrimination made unlawful by Title VII. The investigation was centered on: (1) whether someone willfully placed onions into Roberts' meal knowing that he was allergic to onions; and (2) whether proper protocols were followed after Roberts was administered epinephrine. [DSMF ¶ 10]. In light of these facts, the court finds that

15

Plaintiff's participation in the investigation regarding EMT Roberts' allergic reaction to onions was not protected activity under Title VII.

Although not mentioned by Plaintiff in support of her retaliation claim, she filed a complaint of discrimination with DeKalb County on February 21, 2013, and filed an EEOC charge of discrimination on March 14, 2013. [Pla. Dep. at 61-62; PSMF ¶ 9; DSMF ¶ 17]. Plaintiff alleged in the EEOC charge that she had been subjected to retaliation and discrimination on the basis of her sex and race. [Pla. Dep. at 69, Ex. 12]. These complaints of discrimination are protected activity and satisfy the first *prima facie* element.

In order to establish the second and third *prima facie* elements, Plaintiff must show that she suffered an adverse employment action and that there was a causal link between the protected activity and the adverse action. See Mealing, 564 Fed. Appx. at 427; Bryant, 575 F.3d at 1307-08. The undersigned finds that Plaintiff is unable to make this showing because she cannot prove that she suffered an adverse action after the filing of her internal complaint on February 21, 2013, or after the filing of her EEOC charge on March 14, 2013. In the section of Plaintiff's brief addressing her retaliation claim, she offers little more than conclusory assertions. [Doc. 27 at 18-21]. The only adverse action mentioned by Plaintiff in support of her retaliation argument

16

is that the "severity of the treatment increased once the Plaintiff transferred to the station where the captain in charge made it clear that he did not want females working at his station." [Doc. 27 at 21]. This vague statement does not offer sufficient facts to permit a reasonable jury to find that Plaintiff suffered an adverse employment action. Furthermore, even assuming *arguendo* that Plaintiff were arguing that the alleged "severity of treatment" established a hostile work environment, Plaintiff has failed to show how the unidentified actions of her captain, who "did not want females working at his station," support her retaliation claim. While these actions may be relevant to Plaintiff's gender discrimination claims, there is simply no evidence cited by Plaintiff showing that the alleged treatment was causally connected to her protected activity. Plaintiff contends that "[a]ll of the retaliatory actions came after the Plaintiff participated in the investigation regarding her coworker." [Doc. 27 at 21]. But as previously discussed, Plaintiff's participation in DeKalb County's internal investigation into the incident involving EMT Roberts' allergic reaction to onions was not protected activity under Title VII.

In sum, there is simply no evidence offered by Plaintiff which would allow a reasonable factfinder to conclude that Plaintiff has established a *prima facie* case of retaliation. It is Plaintiff's burden to present evidence supporting her claim, and she

17

has not produced any evidence showing a causal relationship between an allegedly adverse employment action and the filing of her internal complaint on February 21, 2013, or the filing of her EEOC charge on March 14, 2013.  [Doc. 27 at 18-21].  The court has attempted to decipher Plaintiff's arguments relevant to her retaliation claim and has even given her the benefit of the doubt, as discussed *supra*, regarding her protected activity.  However, the court "will not cull through the materials submitted by the Plaintiff searching for evidence which creates a disputed issue.  That is the obligation of Plaintiff's counsel." Bozeman v. Per-Se Technologies, Inc., 456 F. Supp. 2d 1282, 1292 n.13 (N.D. Ga. 2006); accord Dickson v. Amoco Performance Products, Inc., 845 F. Supp. 1565, 1570 (N.D. Ga. 1994) ("It should be a party's responsibility to direct the Court's attention separately to each portion of the record which supports each of the party's distinct arguments.").  For these reasons, it is **RECOMMENDED** that Defendant's summary judgment motion [Doc. 24] be **GRANTED** on Plaintiff's Title VII retaliation claim [Doc. 1, Count 1].

### B.   Gender-Based Disparate Treatment Claims

In Counts Two and Three of her complaint, Plaintiff Cheatham asserts claims for gender-based disparate treatment based on Title VII and the Equal Protection Clause.  Plaintiff's Equal Protection claim is brought pursuant to 42 U.S.C. § 1983,

18

which provides, in pertinent part: "Every person who, under color of any statute . . . of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law. . . ." 42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  Baker v. McCollan, 99 S. Ct. 2689, 2694 n.3 (1979). Because sexual discrimination claims brought under the Equal Protection Clause via § 1983 and Title VII are subject to the same standards of proof and employ the same analytical framework, the court will refer solely to Title VII with the understanding that the analysis applies to both of Plaintiff's claims.  See Bryant, 575 F.3d at 1296 n.20; Cross v. State of Alabama, State Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1507-08 (11th Cir. 1995).  "To establish a *prima facie* case of disparate treatment, a plaintiff must show: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job." Miller-Goodwin v. City of Panama City Beach, Florida, 385 Fed. Appx. 966, 969 (11th Cir. 2010).

Plaintiff is able to establish the first and last *prima facie* elements because she is a woman who was qualified to perform the job of Fire Medic II, the position she held at the time of her resignation.  [DSMF ¶ 3].  To satisfy the second *prima facie* element, Plaintiff must show that she was subjected to an employment action that was materially adverse.  "[O]nly those employment actions that result in 'a *serious and material* change in the terms, conditions, or privileges of employment' will suffice."  Howard v. Walgreen Co., 605 F.3d 1239, 1245 (11th Cir. 2010) (quoting Davis v. Town of Lake Park, Florida, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original)).  "'Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.'"  Id. (quoting Davis, 245 F.3d at 1239).

Plaintiff offers one conclusory sentence in support of her assertion that Defendant took a materially adverse employment action against her on the basis of her gender.  [Doc. 27 at 6].  Plaintiff writes that she "has been subjected to adverse job actions including but not limited to transfers, write-ups, being excluded, shunned, and

20

taunted and finally constructively discharged."[2]  [Id.].  Plaintiff cites to four pages in her deposition, in which she testified about her October 2012 transfer from Fire Station 1 to Fire Station 17 and a written counseling that was issued to her on November 12, 2012.  [Doc. 27 at 6; Pla. Dep. at 29, 32, 33, 35].  Plaintiff's testimony regarding these two employment actions is not sufficient to create a triable issue in support of her disparate treatment claim.

With respect to Plaintiff's transfer, the court finds that this was not a materially adverse job action.  In Doe v. DeKalb County School Dist., 145 F.3d 1441 (11th Cir. 1998), the plaintiff claimed that the school district transferred him from a psychoeducation classroom to an "interrelated" classroom on the basis of his disability.

---

[2]These allegations were included in a page-and-a-half section of Plaintiff's response brief addressing her "gender discrimination claims."  [Doc. 27 at 5-6].  In the section of her response brief labeled "disparate treatment," the only factual allegations she makes are a couple of references relevant to her hostile work environment claim, discussed infra.  [Id. at 7-11].  For example, Plaintiff alleges that she was told by "her captain that women had no place in his firehouse except to cook" and that male employees used the women's restroom and did not flush the toilet.  [Id. at 10].  The remainder of Plaintiff's argument offered in support of her disparate treatment claim is nothing more than a recitation of the legal standard required to bring a discrimination claim.  [Id. at 7-11].  Even worse, Plaintiff discusses what is necessary "to survive summary judgment on a racial discrimination claim under Title VII or § 1981," but she has not asserted a racial discrimination claim.  [Id. at 7; Doc. 1, Counts 1-3].  As previously noted, Plaintiff has only asserted claims for retaliation and gender discrimination.

AO 72A

(Rev.8/82)

Id. at 1444.   Although the plaintiff's claim was based on the Americans with Disabilities Act ("ADA") and not Title VII, the Eleventh Circuit's discussion about whether the transfer was an adverse employment action is still relevant as "the same 'adverse employment action' concept" was at issue.  Id. at 1448.  The court held that the plaintiff could not establish an adverse employment action merely by showing his subjective preference for his former job and noted with approval numerous decisions from other courts holding that "'a *purely* lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action.'"  Id. at 1449 (quoting Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996)).  In the present case, because there is no evidence that Plaintiff was demoted when she was transferred to Fire Station 17, the undersigned finds that the lateral transfer was not a materially adverse employment action.

Plaintiff has also failed to show that any written counseling issued to her was materially adverse.  Although Plaintiff testified that she received a written counseling on November 12, 2012, there is no evidence in the record documenting this counseling.  The record does, however, reveal that Plaintiff received a written counseling for excessive absenteeism/abuse of sick leave on December 10, 2012.  Plaintiff testified that she was not sure if this was the same counseling that she originally believed was

22

issued in November 2012. [DSMF ¶ 14; Pla. Dep. at 35-41, Exs. 4, 5]. Plaintiff also received a written counseling letter on January 20, 2013, for neglect of duty stemming from a violation of DCFR's chain of command policy. [DSMF ¶¶ 15, 29; Pla. Dep. at 48, Ex. 9]. However, Plaintiff has not offered evidence establishing that these letters or any other disciplinary warning rose to the level of an adverse employment action.[3]

The Eleventh Circuit, like most courts that have addressed the issue, has found that "criticisms of an employee's job performance–written or oral–that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit." Davis, 245 F.3d at 1241. The reason behind this is clear:

> Employer criticism, like employer praise, is an ordinary and appropriate feature of the workplace. Expanding the scope of Title VII to permit discrimination lawsuits predicated only on unwelcome day-to-day

---

[3]In the section of Plaintiff's brief addressing her sexually hostile work environment claim, Plaintiff alleges that Fire Chief Edward O'Brien threatened to suspend her during a meeting on February 1, 2013. [Doc. 27 at 12-13]. Plaintiff testified that she and O'Brien were discussing a grievance that she had filed and that he allegedly told her, "I am going to give the grievance back to you and let you decide on what to do about it because if I go deeper into it, [you] could be suspended for 30 days or worse. I'll let you decide. I took it easy on you because you have not been in any trouble before." [Pla. Dep. at 58-59; PSMF ¶ 8]. Although O'Brien's threat of a possible suspension is not offered by Plaintiff in support of her disparate treatment claim, even if the threat were considered, it would not satisfy the standard necessary to establish an adverse employment action for the reasons discussed *infra*. See Akins v. Fulton County, Georgia, 420 F.3d 1293, 1300-02 (11th Cir. 2005) (finding that threats of suspension and termination were not adverse employment actions).

> critiques and assertedly unjustified negative evaluations would threaten the flow of communication between employees and supervisors and limit an employer's ability to maintain and improve job performance. Federal courts ought not be put in the position of monitoring and second-guessing the feedback that an employer gives, and should be encouraged to give, an employee.

Id. at 1242. In Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1283-84 (11th Cir. 1999) (per curiam), the court addressed the issue of whether a written warning and a decision to classify the plaintiff's absences as AWOL were adverse employment actions. Because the "plaintiff did not suffer any repercussions" from the classification or the memorandum, which "expressed concern with plaintiff's absences and warned of possible ramifications[,]" the court found that they were not adverse actions. Id.

In the present case, the written counseling letters issued to Plaintiff Cheatham did not result in a demotion or a suspension. Moreover, Plaintiff did not suffer a loss in pay or benefits. See DeKalb County School Dist., 145 F.3d at 1452. The Eleventh Circuit has found that far more serious verbal and written disciplinary actions, including reprimands, negative evaluations, exclusion from meetings, and threats of termination and suspension without pay, did not constitute adverse employment actions even when considered in the aggregate. See Akins, 420 F.3d at 1300-02. Given these facts, the undersigned concludes that Plaintiff has not carried her burden

24

of showing that she was subjected to a materially adverse job action, which is the second *prima facie* element.

Plaintiff has not only failed to present evidence showing that she suffered an adverse employment action, she has not shown that Defendant treated similarly situated male employees more favorably. The Eleventh Circuit has held, "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (citing Silvera v. Orange County School Bd., 244 F.3d 1253, 1259 (11th Cir. 2001)). In cases involving disciplinary actions for employee misconduct, the "'quantity and quality of the comparator's misconduct'" must also be nearly identical. Burke-Fowler v. Orange County, Florida, 447 F.3d 1319, 1323 (11th Cir. 2006) (quoting Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999)). Here, Plaintiff has not named a single male employee that she contends was similarly situated to her. She merely asserts that "[m]ale employees similarly situated outside her classification have been treated more favorably as evidenced by their ability to take leave and the creation of a hostile work environment with no

discipline from the county."[4]   [Doc. 27 at 6].   Plaintiff's vague and conclusory assertion is insufficient to create a genuine dispute on the issue of a similarly situated comparator.  As Defendant correctly notes, "Plaintiff fails to identify any comparators much less show similarity in all relevant respects."  [Doc. 29 at 5].

In a disparate treatment action, the plaintiff carries the burden of demonstrating that the defendant has unlawfully discriminated against her.  See Texas Dep't of Community Affairs v. Burdine, 101 S. Ct. 1089, 1093-95 (1981).  Plaintiff has failed to carry this burden.  Accordingly, it is **RECOMMENDED** that Defendant's summary judgment motion [Doc. 24] be **GRANTED** on Plaintiff's Title VII and § 1983/Equal Protection claims for gender-based disparate treatment [Doc. 1, Counts 2, 3].

### C.    Hostile Work Environment Claim

Plaintiff Cheatham next alleges that Defendant DeKalb County "created a hostile environment and allowed male employees to harass Plaintiff based on her gender, in violation of Title VII."  [Doc. 1, Count 2].  Although Title VII does not explicitly mention sexual harassment, courts have recognized that harassment which changes the terms or conditions of employment constitutes a violation of the Act.  See, e.g., Meritor Savings Bank, FSB v. Vinson, 106 S. Ct. 2399, 2405 (1986); Mendoza

---

[4]Plaintiff's hostile work environment claim is discussed *infra*.

26

v. Borden, Inc., 195 F.3d 1238, 1244-45 (11th Cir. 1999) (en banc).  Hostile work environment sexual harassment occurs "when an employer's conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment.'"  Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1315 (11th Cir. 1989) (quoting Meritor, 106 S. Ct. at 2404-05).  To establish a *prima facie* case of hostile work environment sexual harassment, a plaintiff must show the following: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon her sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and to create a discriminatorily abusive working environment; and (5) the defendant is responsible for such environment under either a theory of vicarious or of direct liability.  See Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1279-80 (11th Cir. 2003); Orquiola v. National City Mortg. Co., 510 F. Supp. 2d 1134, 1149 (N.D. Ga. 2007).  Plaintiff is able to establish the first *prima facie* element because she is a woman.  The court also finds that she can establish the second and third elements based on a statement allegedly made by Captain William Mitchell.  Plaintiff testified that on numerous occasions, Mitchell stated, "The only reason why a woman is in the fire service is to cook and do clerical work." [Pla. Dep. at 65].  This

27

statement is sufficient to show that Plaintiff was subjected to unwelcome harassment based upon her sex.

In support of her hostile work environment claim, Plaintiff also cites to a threat of suspension allegedly made by Fire Chief Edward O'Brien during a meeting with Plaintiff on February 1, 2013. [Doc. 27 at 12-13]. Plaintiff testified that she met with O'Brien to discuss a grievance that she had filed and that he allegedly told her, "I am going to give the grievance back to you and let you decide on what to do about it because if I go deeper into it, [you] could be suspended for 30 days or worse. I'll let you decide. I took it easy on you because you have not been in any trouble before." [Pla. Dep. at 58-59; PSMF ¶ 8]. This statement does not support Plaintiff's sexually hostile work environment claim. While O'Brien warned Plaintiff that she "could be suspended," she has failed to offer any evidence that the threat was made because of her sex. Plaintiff also alleges that on more than one occasion, Captain Mitchell and Firefighter McCollum defecated in the women's restroom and did not flush the toilet. [Pla. Dep. at 62-65]. But like the comment from O'Brien, Plaintiff has failed to show that the two men's actions in not flushing the toilet were taken because of Plaintiff's sex. [Doc. 27].

28

Even assuming *arguendo* that the suspension threat and the actions in leaving the toilet dirty were based upon Plaintiff's sex, the court finds that Plaintiff is unable to establish a *prima facie* case of hostile work environment because she cannot show that the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment.  See Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010) ("Either severity *or* pervasiveness is sufficient to establish a violation of Title VII.") (emphasis in original).  For sexual harassment to be actionable under Title VII, it "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2283 (1998).  In determining whether the sexual harassment was sufficiently hostile or abusive to affect a term, condition or privilege of employment, courts are to look at all the circumstances, including the frequency and severity of the conduct.  See id.  Courts should also look at whether the conduct is "'physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Id. (citation omitted).  The Supreme Court has emphasized that Title VII "does not set forth 'a general civility code for the American workplace.'"  Burlington Northern & Santa Fe Railway Co. v. White, 126 S. Ct. 2405, 2415 (2006)

29

(quoting <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 118 S. Ct. 998, 1002-03 (1998)).  "'[S]imple teasing,' . . . offhand comments, and isolated incidents (unless extremely serious)" will not amount to a hostile work environment.  <u>Faragher</u>, 118 S. Ct. at 2283 (citations omitted).

The harassment as alleged by Plaintiff Cheatham was not pervasive.  O'Brien's statement to Plaintiff warning her of a possible suspension happened once on February 1, 2013.  With regard to Mitchell's comments and the unflushed toilets, Plaintiff has failed to show that these took place on a frequent basis.  Plaintiff alleges that the hostile work environment occurred at Fire Station 17, and she worked at this station for approximately ten months–from the end of October 2012 through the end of August 2013.  [DSMF ¶ 28].  The evidence of the alleged harassment is found in Plaintiff's deposition, but her testimony provides no specifics regarding frequency. Plaintiff merely implied that there was more than one occasion when toilets were left unflushed, and she testified that there were "numerous times" that Mitchell made the comment about a woman only being in the fire service to cook and do clerical work. [Pla. Dep. at 62-65].  These allegations would not support a finding that the complained-of conduct was frequent as defined by Eleventh Circuit caselaw.

30

In <u>Guthrie v. Waffle House, Inc.</u>, 460 Fed. Appx. 803, 807 (11th Cir. 2012), the court found that "a few dozen comments or actions . . . spread out over a period of eleven months" were not sufficiently frequent to support the plaintiff's harassment claim.  The <u>Guthrie</u> court contrasted this insufficient level of frequency with cases where the Eleventh Circuit found a hostile work environment.  <u>Id.</u>  Specifically, the court noted that in <u>Reeves</u>, 594 F.3d at 804, obscene and derogatory comments about the plaintiff and women in general were made "on a daily basis[,]" and in <u>Dees v. Johnson Controls World Services, Inc.</u>, 168 F.3d 417, 418 (11th Cir. 1999), there was "almost-daily abuse."  <u>Guthrie</u>, 460 Fed. Appx. at 807 (internal quotation marks omitted).  The <u>Guthrie</u> court also pointed to the Eleventh Circuit's decision in <u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d 1269, 1276 (11th Cir. 2002), which found the harassing conduct to be sufficiently frequent where it occurred "three to four times a day" during a one month period.  <u>Guthrie</u>, 460 Fed. Appx. at 807 (internal quotation marks omitted).  In the present case, there is no evidence of this level of frequency.  Plaintiff worked at Fire Station 17 for ten months, and her vague assertion of Mitchell making a sexually derogatory comment "numerous times" and of toilets being left unflushed more than once would not support a finding that the alleged harassment was pervasive.

31

The undersigned also finds that Plaintiff has not shown that the alleged harassment was sufficiently severe to invoke the protections of Title VII. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." Harris v. Forklift Systems, Inc., 114 S. Ct. 367, 370 (1993). Title VII is violated only when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]'" Id. (quoting Meritor, 106 S. Ct. at 2405). There is no question that a reasonable jury could find the unflushed toilet incidents and the alleged "cook and clerical work" comment to be crude, mean, and unprofessional. However, they were neither physically threatening nor sufficiently humiliating when viewed in light of Eleventh Circuit caselaw.

In Mendoza, 195 F.3d at 1246-47, the Eleventh Circuit held that a supervisor's rubbing his hip against the plaintiff's hip while touching her shoulder and smiling, looking at her groin area while making a sniffing sound, and "constantly" staring and following her did not rise to the level of actionable harassment. In Gupta v. Florida Bd. of Regents, 212 F.3d 571, 578-79 (11th Cir. 2000), overruled on other grounds by

32

<u>Burlington Northern</u>, 126 S. Ct. 2405, the Eleventh Circuit addressed an alleged harasser who was accused of touching plaintiff's hand and the inside of her thigh, lifting her dress hem, repeatedly asking her to lunch, telling her that she was beautiful, staring at her legs, and calling her at home on numerous occasions at night and asking if she was in bed or talking to her boyfriend. The court found that these acts were not sufficiently severe to create a sexually hostile work environment. <u>Id.</u> at 584-86. In <u>Guthrie</u>, the plaintiff, who worked as a waitress at a restaurant, alleged that she was sexually harassed by a cook and her supervisor. 460 Fed. Appx. at 804. The plaintiff alleged that the cook, *inter alia*, grabbed the plaintiff's butt two to five times; "talked dirty" to her, including saying five times that he wanted to have sex with her and "lick her all over"; spoke about having sex in a van in the parking lot; and asked the plaintiff on a date 10 to 20 times. <u>Id.</u> (internal quotation marks omitted). The plaintiff alleged that her supervisor, *inter alia*, told her, "I want to have you"; approached her from behind and kissed her on the cheek; "said on 11 to 15 occasions that he wanted to have [the plaintiff's] female friend"; asked the plaintiff if she had ever been with a black man; and told the plaintiff's friend, in the plaintiff's presence, "once you go black, you never go back, that he would bust [the friend] wide open, be her first black," and that he would perform certain sexual acts on her. <u>Id.</u> at 805 (internal quotation marks

33

omitted).  The Eleventh Circuit held that although the two men "were rude and boorish in their statements and behavior, their actions fall well short of conduct so severe as to 'alter or change the terms of [the plaintiff's] working conditions,' as determined by this court's case law."  Id. at 807 (no citation provided).

In the present case, the allegations made by Plaintiff are mild compared to the facts in these Eleventh Circuit cases.  As previously noted, Plaintiff testified that Captain Mitchell stated on numerous occasions, "The only reason why a woman is in the fire service is to cook and do clerical work."  [Pla. Dep. at 65].  Plaintiff also testified that on more than one occasion Captain Mitchell and Firefighter McCollum defecated in the women's restroom and did not flush the toilet.  [Id.].  Finally, Plaintiff contends that Fire Chief O'Brien warned her that she could be suspended.  [Pla. Dep. at 58-59; PSMF ¶ 8].  These actions would not permit a reasonable factfinder to conclude that Plaintiff's workplace atmosphere was "'permeated with 'discriminatory intimidation, ridicule, and insult[.]'"  Harris, 114 S. Ct. at 370 (quoting Meritor, 106 S. Ct. at 2405).  Because Plaintiff is unable to establish a *prima facie* case, the undersigned **RECOMMENDS** that Defendant's summary judgment motion [Doc. 24] be **GRANTED** on Plaintiff's claim for gender-based hostile work environment [Doc. 1, Count 2].

34

Although Plaintiff resigned her employment with DCFR on August 21, 2013, she alleges that she was constructively discharged from her position.  [Doc. 1 ¶ 20; Doc. 27 at 6].  Plaintiff asserted in her complaint that she was "forced to resign her position because of the toll the hostile environment had on her health."  [Doc. 1 ¶ 20]. "To establish a constructive discharge, a plaintiff must show that working conditions were so intolerable that a reasonable person in her position would have been compelled to resign." Menzie v. Ann Taylor Retail Inc., 549 Fed. Appx. 891, 894-95 (11th Cir. 2013) (citation and internal quotation marks omitted).  The Eleventh Circuit has explained that "[t]his objective standard sets a high threshold; it requires a plaintiff to show harassment that is more severe or pervasive than the minimum level required to establish a hostile working environment." Id. (citation omitted).  As previously discussed, Plaintiff Cheatham "failed to meet even the standard for a hostile work environment.  She cannot, therefore, meet the higher standard for constructive discharge." Barrow v. Georgia Pacific Corp., 144 Fed. Appx. 54, 59 (11th Cir. 2005). It is, therefore, **RECOMMENDED** that Defendant's summary judgment motion [Doc. 24] be **GRANTED** on Plaintiff's constructive discharge claim.

35

## IV.   Conclusion

Based on the foregoing reasons and cited authority, the undersigned **RECOMMENDS** that Defendant's summary judgment motion [Doc. 24] be **GRANTED** on all of Plaintiff Cheatham's claims [Doc. 1, Counts 1-3] and that these claims be **DISMISSED WITH PREJUDICE**.

All pretrial matters have been concluded with the issuance of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), this Court's Local Rule 72.1, and Standing Order 14-01 (N.D. Ga. August 15, 2014). The Clerk, therefore, is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO RECOMMENDED** this 10th day of December, 2015.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

36