IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KIESHA CHEATHAM,

                    **Plaintiff,**

       **v.**                                            **1:14-cv-1887-WSD**

DEKALB COUNTY, GEORGIA,

                    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Janet F. King's Final

Report and Recommendation [32] ("R&R"), recommending that Defendant

DeKalb County, Georgia's ("Defendant") Motion for Summary Judgment [24] be

granted.  Also before the Court are Plaintiff Kiesha Cheatham's ("Plaintiff")

Objections [34] ("Objections") to the R&R.

## I.    BACKGROUND[1]

Plaintiff is an African-American female who was born in 1970.

(Defendant's Statement of Material Facts [24.2] ("DSMF") ¶ 1).  In August 2008,

Plaintiff was hired by DeKalb County Fire Rescue ("DCFR") as a Fire Medic.  (Id.

---

[1]    The facts are taken from the R&R and the record.  Plaintiff's objections to
the facts set out in the R&R are addressed below.

¶ 2).  Plaintiff was promoted to the rank of Fire Medic II effective November 13, 2010.  (Id. ¶ 3).

On October 16, 2012, plaintiff was eating at DCFR Fire Station 1 with Christopher Roberts, her co-worker and Emergency Medical Technician ("EMT") partner.  (DSMF ¶ 6).  During the meal, Plaintiff witnessed Roberts experience an allergic reaction to onions.  (Id.).  Captain Matthew Robison, Fire Apparatus Operator ("FAO") Bradley Catroneo, and Captain James Damico also were at the table during the incident.  (Id. ¶ 7).  Plaintiff did not provide assistance to EMT Roberts.  Robison and EMT Michael Gales, who entered the room while Roberts was having the reaction, came to Roberts's aid and administered epinephrine to him.  (Id. ¶ 8).

On October 28, 2012, approximately two weeks after the incident involving Roberts's allergic reaction, Plaintiff was transferred from Fire Station 1 to Fire Station 17.  (Id. ¶ 13).  During October 2012, Plaintiff's chain of command at DCFR's Fire Station 1 was:  Captain/Stations Officers Matthew Robison and James Damico; Battalion Chief Douglas Brown; Acting Assistant Chief Christopher Morrison; Interim Deputy Chief Norman Augustin; and Fire Chief/Director Edward O'Brien.  (Id. ¶ 27).  From the end of October 2012 through the end of August 2013, when Plaintiff resigned her employment with DCFR, her

chain of command at Fire Station 17 was:  Captain/Stations Officer William Mitchell; Battalion Chief Vincent Jeter; Acting Assistant Chief Christopher Morrison; Interim Deputy Chief Norman Augustin; and Fire Chief/Director Edward O'Brien.  (Id. ¶ 28).

DCFR's Internal Affairs Unit and the DeKalb County District Attorney's Office investigated the incident involving Roberts's allergic reaction.  (Id. ¶ 9). The investigators sought to determine whether someone placed onions in the meal knowing that Roberts was allergic to them, and whether proper protocols were followed after the epinephrine was administered.  (Id. ¶ 10).  On October 25, 2012 and November 30, 2012, Plaintiff provided written statements about the incident to DCFR's Internal Affairs Unit.  (Id. ¶ 11).

In its December 13, 2012, investigative report, DCFR's Internal Affairs Unit determined that Plaintiff had falsified records and neglected her duty.  (Plaintiff's Deposition [26] ("Pl. Dep."), Ex. 13 at 27-30).  The investigative report stated that Plaintiff made misleading statements with the intent to deceive, which resulted in the falsification of DCFR records.  (Id.).  According to the report, Plaintiff falsified pharmaceutical documents by identifying a vial of epinephrine as damaged rather than showing that it was used to treat Roberts.  (Id. at 5-21, 24-30).  The investigation concluded, however, that Plaintiff falsified the pharmaceutical

documents after Captain Robinson instructed her to do so.  (Id. at 27-30).  DCFR's Internal Affairs Unit also found that Plaintiff "could have contacted and requested guidance from her next immediate supervisor (Brown) to advise him of the unreasonable and unethical order" given by Robison.  (Id.).

Plaintiff testified that, after her October 2012 transfer to Fire Station 17, she was subjected to a gender-based hostile work environment.  (Pl. Dep. at 62-65). According to Plaintiff, two male firefighters, on more than one occasion, defecated in the women's restroom and did not flush the toilet.  (Id.).  Plaintiff testified:

> Q.  [W]hat led you to believe that these were the two individuals that were engaging in this alleged conduct?
>
> A.  Because there were times I couldn't get in the bathroom because they were there and I was told to use the men's facility. . . .
>
> Q.  How do you know it was them?
>
> A.  Because I would be standing at the counter and the way the station is set up, the counter is here.  When you come in, the women's facility is to the right and men's to the left.  So I'm standing at the counter because I have to use the facility and I see them when they come out.
>
> Q.  Okay.  And your allegation about them refusing to flush to taunt you, how do you know that?
>
> A.  Because there would be feces in the toilet when I go in.
>
> Q.  How do you know it was intended to taunt you?
>
> A.  Because comments would always be made the only reason why a woman is at the station is to cook and do my clerical.  Because I

4

would place a sign on the door saying, a typed sign saying woman on shift today.  I would turn the sign around because there's one that says male and female.  I would turn it around to read female. I was the only female at the station, and I've had this conversation with them prior to more than once.

(Pl. Dep. at 63-65).  Plaintiff testified that Captain Mitchell stated that the "only reason why a woman is in the fire service is to cook and do clerical work."  (Id. at 65).

On December 10, 2012, Plaintiff received a written counseling for excessive absenteeism and abuse of sick leave.  (DSMF ¶ 14).  Plaintiff alleges that while she worked at Station 17, she was denied requests for time off while male medics were given leave.  (Plaintiff's Statement of Material Facts [27.1] ("PSMF") ¶ 13; Pl. Dep. at 65-67).  On January 20, 2013, Plaintiff received a written counseling letter for neglect of duty stemming from a violation of DCFR's chain of command policy.  (DSMF ¶¶ 15, 29; Pl. Dep. at 48, Ex. 9).  In the letter, Edward O'Brien, Director/Fire Chief of DCFR, wrote:  "On October 26, 2012, you violated the chain of command against the advice of your station officer. After speaking to your station officer, you went directly to speak to the Operations Deputy Chief; therefore, breaking the chain of command."  (Pl. Dep. at 48, Ex. 9).  Plaintiff testified that she got permission from her immediate supervisor, Captain Robison, to talk to the Operations Deputy Chief.  (Pl. Dep. at 47-48).

Plaintiff testified that she filed "numerous grievances . . . [d]uring the time frame of [or] after the onion incident."  (Pl. Dep. at 58, 59).  Plaintiff testified that on February 1, 2013, she had a meeting with Fire Chief Edward O'Brien, and he allegedly told her, "I am going to give the grievance back to you and let you decide on what to do about it because if I go deeper into it, [you] could be suspended for 30 days or worse.  I'll let you decide.  I took it easy on you because you have not been in any trouble before."  (Pl. Dep. at 58-59; PSMF ¶ 8).[2]  Plaintiff testified that she filed a complaint of discrimination with DeKalb County on February 21, 2013.  (Pl. Dep. at 61-62; PSMF ¶ 9).  According to Plaintiff, the County failed to respond to her complaint.  (Id.).

On March 14, 2013, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  (DSMF ¶ 17).  Plaintiff alleged that she was subjected to retaliation and discrimination on the basis of her sex and race.  (Pl. Dep. at 69, Ex. 12).

On August 21, 2013, Plaintiff resigned her employment with DCFR.  (DSMF ¶ 3).  The same month, Plaintiff took a full-time salaried position as Shift Captain for American Medical Response, an ambulance company, earning an

---

[2]      Plaintiff did not testify as to the date, nature, or number of these "numerous grievances," and the exchange with Chief O'Brien apparently related to one, unspecified, grievance.

annual salary of $56,000.00, with benefits.  (Id. ¶ 4).  For calendar year 2012, Plaintiff earned a gross wage of $45,228.03 from her employment with DeKalb County.  (DSMF ¶ 30).

On June 16, 2014, Plaintiff filed her Complaint [1].  In it, she alleges a retaliation claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., and gender discrimination claims under 42 U.S.C. § 1983, based on Title VII and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

On August 12, 2015, Defendant filed its Motion for Summary Judgment. On December 10, 2015, the Magistrate Judge issued her R&R, recommending Defendant's Motion for Summary Judgment be granted.  The Magistrate determined that summary judgment should be granted on Plaintiff's Title VII retaliation claim, finding that Plaintiff failed to make out a *prima facie* case of retaliation because she fails to show a causal relationship between an allegedly adverse employment action and the filing of her internal complaints or her EEOC charge.  (R&R at 17-18).  The Magistrate found that summary judgment is warranted on Plaintiff's gender-based disparate treatment claims, because Plaintiff failed to present evidence showing that she suffered an adverse employment action, and did not show that Defendant treated similarly-situated male employees

more favorably than it treated her.  (Id. at 25-26).  The Magistrate also determined that Plaintiff failed to establish a *prima facie* case of hostile work environment sexual harassment, because she does not show that her harassment was based upon her sex and that the harassment was sufficiently severe.  (Id. at 27-29).

On December 24, 2015, Plaintiff filed her Objections to the R&R.  Plaintiff argues that the Magistrate Judge erred in finding that Plaintiff failed to identify a comparator, because Plaintiff was the only female at her station and "was treated differently than everyone there," which "is sufficient to establish comparators." (Obj. at 4).  Plaintiff appears also to argue that she established that she was subjected to an adverse employment action because "all of the alleged conduct [should] be considered *collectively*."  (Id. at 6).  She claims that she "adduced sufficient evidence of a causal link between [her] protected activity and the adverse employment actions."  (Id. at 7).  Plaintiff also objects to the Magistrate Judge's finding regarding her hostile work environment sexual harassment claim, restating the evidence she raised in opposition to Defendant's Summary Judgment Motion and concluding that the "undisputed facts show that Plaintiff was targeted because she was the only woman and it was pervasive."  (Id. at 8-9).[3]

---

[3]     Additional facts will be set forth as necessary below.

## II.   DISCUSSION

### A.   Legal Standards

#### 1.   *Review of a Magistrate Judge's Report and Recommendation*

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  If no party has objected to the report and recommendation, a court conducts only a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).  "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court."  Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).  The Court notes that many of Plaintiff's objections to the R&R are conclusive or general.  The Court will not consider objections that do not identify the findings to which an objection is made.  See Marsden, 847 F.2d at 1548.  The objections to the R&R which the Court will consider are addressed below.

2.    *Summary Judgment Standard*

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007).  Where the record tells two different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment. Id. "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at

1282.  "If the record presents factual issues, the court must not decide them; it must

deny the motion and proceed to trial."  <u>Herzog</u>, 193 F.3d at 1246.  The party

opposing summary judgment "'must do more than simply show that there is some

metaphysical doubt as to the material facts . . . . Where the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party, there is no

genuine issue for trial.'"  <u>Scott</u>, 550 U.S. at 380 (quoting <u>Matsushita Elec. Indus.</u>

<u>Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986)).  A party is entitled

to summary judgment if "the facts and inferences point overwhelmingly in favor of

the moving party, such that reasonable people could not arrive at a contrary

verdict."  <u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d 1269, 1275 (11th Cir.

2002) (internal quotations and brackets omitted).

    B.    <u>Analysis</u>

    The Court first turns to Plaintiff's objections to the Magistrate Judge's

factual determinations.  The Magistrate Judge noted that Plaintiff's Statement of

Material Facts and Response to Defendant's Statement of Material Facts [28] often

failed to cite to evidence in the record, as required by Local Rule 56.1 B.  (R&R at

3).  The Magistrate also noted that, when Plaintiff did cite to the record, the cited

evidence often does not support the assertions and denials she made.  (<u>Id.</u> at 3-4).

Accordingly, the Magistrate did not consider the assertions and denials made by

Plaintiff that were not supported with citation to relevant portions of the record.

The local rules of this Court provide that:

> This Court will deem each of the movant's facts as admitted unless the respondent:  (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1).

LR 56.1 B.(2)a., N.D. Ga.  Compliance with Local Rule 56.1 is the "only permissible way . . . to establish a genuine issue of material fact" in response to the moving party's assertion of undisputed facts.  Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008).  "The proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement."  Id.  The Court then must review the movant's statement of undisputed facts and ensure—by, "[a]t the least, . . . review[ing] all of the evidentiary materials submitted in support of the motion for summary judgment"—that the movant's statement of facts is supported by the record.  Id. at 1269.

In her Objections, Plaintiff argues that the Magistrate's determination that

12

Plaintiff often failed to support her claims with facts is "untrue as The [sic] relative [sic] material issues as submitted through Plaintiff's submission of material facts all cite to deposition testimony." (Obj. at 3-4). She states that, "[o]f the 15 undisputed facts submitted by Plaintiff only 3 were solely supported by the complaint and those three facts were admitted to in the Defendant's motion." (Id. at 4). She claims the "Court is required to review all of the pleadings in their totality." (Id.). Plaintiff also states that she "specifically objects to all factual conclusions made by the Magistrate Judge and asks that the matter be allowed to proceed to trial." (Id.).

The Court has independently reviewed Plaintiff's Statement of Material Facts, Plaintiff's Response to Defendant's Statement of Material Facts, Plaintiff's citations to the record, Defendant's Statement of Material Facts, and Defendant's citations to the record. The Court agrees with the Magistrate that Plaintiff often fails to cite to the record, and that, where she does cite to the record, the cited material often fails to support Plaintiff's assertions.[4] The Magistrate Judge

---

[4]     Plaintiff's claim that the "Court is required to review all of the pleadings in their totality" is specious, and overlooks the requirements of Local Rule 56.1. The Court also declines to entertain Plaintiff's blanket objection "to all factual conclusions made by the Magistrate Judge." See Marsden, 847 F.2d at 1548 ("Parties filing objections to a magistrate's report and recommendation must

correctly declined to consider the assertions and denials made by Plaintiff that were not supported with citation to relevant portions of the record.  See Reese, 527 F.3d at 1268.  The Magistrate Judge also correctly reviewed the evidentiary materials submitted in support of Defendant's Motion for Summary Judgment to ensure that Defendant's Statement of Material Facts is supported.  See id. at 1269. Accordingly, Plaintiff's objections to the Magistrate Judge's factual determinations are overruled, and the Court adopts the facts as set out in the R&R.

### 1.    *Gender-Based Disparate Treatment Claims*

In Counts Two and Three of her Complaint, Plaintiff asserts claims for gender-based disparate treatment based on Title VII and the Equal Protection Clause.  Plaintiff's Equal Protection claim is brought under 42 U.S.C. § 1983, which provides, in pertinent part:  "Every person who, under color of any statute . . . of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . ."  42 U.S.C. § 1983. Because sexual discrimination claims brought under the Equal Protection Clause via Section 1983 and Title VII are subject to the same standards of proof and

---

specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court.").

employ the same analytical framework, the Court will refer solely to Title VII with the understanding that the analysis applies to both of Plaintiff's claims.  See Cross v. Ala. Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1507-1508 (11th Cir. 1995).  "To establish a *prima facie* case of disparate treatment, a plaintiff must show:  (1) she is a member of a protected class; (2) she was subjected to [an] adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job." Miller-Goodwin v. City of Panama City Beach, 385 F. App'x. 966, 969 (11th Cir. 2010) (citing McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008)).

The Magistrate Judge determined that Plaintiff is able to establish the first and fourth *prima facie* case elements, because she is a woman who was qualified to perform the job of Fire Medic II, the position she held at the time of her resignation.  (R&R at 20).  No party objects to these findings, and the Court finds no plain error in them.  The Magistrate Judge also determined that Plaintiff failed to establish the second element of her *prima facie* case of gender-based disparate treatment, because she failed to show that she was subjected to a materially adverse employment action.  (R&R at 20).  Although her Objections are vague and unclear, it does not appear that Plaintiff objects to this finding.  While it is not required to do so, the Court conducts its *de novo* review of the Magistrate Judge's

finding that Plaintiff failed to show she that she was subjected to a materially

adverse employment action for the purpose of establishing the second element of

her *prima facie* case of gender-based disparate treatment.  <u>See</u> 28 U.S.C.

§ 636(b)(1).

An adverse employment action is one that "impact[s] the terms, conditions,

or privileges of the plaintiff's job in a real and demonstrable way."  <u>Davis v. Town</u>

<u>of Lake Park</u>, 245 F.3d 1232, 1239 (11th Cir. 2001) (internal quotation marks

omitted).  "Moreover, the employee's subjective view of the significance and

adversity of the employer's action is not controlling; the employment action must

be materially adverse as viewed by a reasonable person in the circumstances."  <u>Id.</u>

Plaintiff claims that she was "subjected to adverse job actions including but

not limited to transfers, write-ups, being excluded, shunned, and taunted and

finally constructively discharged."  ([27] at 6).  In support of this argument,

Plaintiff relies on deposition testimony in which she testified about her October

2012 transfer from Fire Station 1 to Fire Station 17, and a written counseling that

was issued to her on November 12, 2012.  (<u>Id.</u> at 6; Pl. Dep. at 29, 32, 33, 35).  The

Magistrate Judge determined that Plaintiff's testimony regarding these two

employment actions is not sufficient to create a triable issue in support of her

disparate treatment claim.  (R&R at 21).  First, the Magistrate found that there is

no evidence that Plaintiff was demoted when she was transferred to Fire Station

17, and therefore the lateral transfer to Fire Station 17 was not a materially adverse

employment action.  (Id. at 22).  The Court agrees.  See Doe v. DeKalb Cty School

Dist., 145 F.3d 1441, 1449 (11th Cir. 1998) ("[A] *purely* lateral transfer, that is, a

transfer that does not involve a demotion in form or substance, cannot rise to the

level of a materially adverse employment action.").  Plaintiff did not offer any

evidence that the transfer was other than a lateral one.

The Magistrate Judge next found that Plaintiff failed to show that any

written counseling issued to her was materially adverse.  While Plaintiff testified

that she received a written counseling on November 12, 2012, the Magistrate Judge

noted that there is no evidence in the record documenting this counseling.  (R&R at

22).  The record does show that, on December 10, 2012, Plaintiff received a

written counseling for excessive absenteeism and abuse of sick leave.  Plaintiff

testified that she was not sure if this was the same counseling that she originally

believed was issued in November 2012.  (DSMF ¶ 14; Pl. Dep. at 35-41, Exs. 4, 5).

Plaintiff also received a written counseling letter on January 20, 2013, for neglect

of duty stemming from a violation of DCFR's chain of command policy.  (DSMF

¶¶ 15, 29; Pl. Dep. at 48, Ex. 9).  The Magistrate determined that Plaintiff did not

offer any evidence establishing that these letters or any other disciplinary warning

rose to the level of an adverse employment action.[5]  The Court agrees, because "criticisms of an employee's job performance—written or oral—that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit." Davis, 245 F.3d at 1241.  Here, the Magistrate Judge found that the written counseling letters issued to Plaintiff did not result in demotion or a suspension, and Plaintiff did not suffer a loss in pay or benefits.  The Court agrees with the Magistrate Judge's determination, and, on its *de novo* review, finds that Plaintiff fails to establish that she was subjected to an adverse employment action.

The Magistrate Judge found further that Plaintiff failed to establish the third element of her *prima facie* case of gender-based disparate treatment, because she failed to present evidence showing that Defendant treated similarly-situated male employees more favorably.  (R&R at 25-26).  Plaintiff's only attempt to establish this element was her conclusory assertion that "[m]ale employees similarly situated outside her classification have been treated more favorably as evidenced by their ability to take leave and the creation of a hostile work environment with no

---

[5]   The Magistrate noted that, even if Plaintiff relied on Fire Chief Edward O'Brien's alleged February 1, 2013, threat of a possible suspension, it would not satisfy the standard necessary to establish an adverse employment action.  (R&R at 23 n.3).  The Court agrees.  See Atkins v. Fulton Cty., 420 F.3d 1293, 1300-1302 (11th Cir. 2005) (finding that threats of suspension and termination are not adverse employment actions).

discipline from the county." ([27] at 6).  The Magistrate Judge found that Plaintiff's vague and conclusory assertion is insufficient to create a genuine dispute on the issue of a similarly-situated comparator.  (R&R at 26).

Plaintiff objects to this finding, arguing that Plaintiff "was the ONLY female at her station.  She was treated differently than everyone there.  Everyone else was a male.  That is sufficient to establish comparators."  (Obj. at 4) (emphasis in original).  Plaintiff does not offer any legal authority for her argument, because there is none.  Plaintiff has the burden to show "that the *employee* she identifies as a comparator is similarly situated to the plaintiff in an relevant respects" Blackman v. Fla. Dep't of Bus. & Prof'l Regulation, 599 F. App'x 907, 913 (11th Cir. 2015) (quoting Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004)) (emphasis added, alterations omitted).  Plaintiff has not even attempted to identify a similarly-situated employee, and thus fails to show that another employee was treated differently from her.  Upon *de novo* review, Plaintiff's objections are overruled.

The Court finds, because Plaintiff fails to create a triable issue of fact on the second and third elements of her *prima facie* case of gender-based disparate

19

treatment, that Defendant's Motion for Summary Judgment is required to be granted on these claims.[6]

### 2.    *Hostile Work Environment Claim*

Plaintiff next alleges that Defendant created a hostile environment and allowed male employees to harass Plaintiff based on her gender, in violation of Title VII.  ([1]).  Although Title VII does not explicitly mention sexual harassment, courts have recognized that harassment which changes the terms or conditions of employment constitutes a violation of Title VII.  See, e.g., Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986); Mendoza v. Borden, Inc., 195 F.3d 1238, 1244-45 (11th Cir. 1999) (en banc).  Hostile work environment sexual harassment occurs "when an employer's conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment.'"  Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1315 (11th Cir. 1989) (quoting Meritor, 477 U.S. at 65).

To establish a *prima facie* case of hostile work environment based on sexual harassment, a plaintiff must show:  (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon her

---

[6]    Summary judgment is warranted on Plaintiff's gender-based disparate treatment claims because she failed to meet two elements of her *prima facie* case.

sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and to create a discriminatorily abusive working environment; and (5) the defendant is responsible for such environment under either a theory of vicarious or of direct liability.  See Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1279-80 (11th Cir. 2003); Orquiola v. Nat'l City Mortg. Co., 510 F. Supp. 2d 1134, 1149 (N.D. Ga. 2007).

The Magistrate Judge determined that Plaintiff is able to establish the first element of her *prima facie* case because she is a woman, and that she can establish the second and third elements based on a statement allegedly made by Captain William Mitchell.  Plaintiff testified that, on numerous occasions, Mitchell stated, "The only reason why a woman is in the fire service is to cook and do clerical work."  (Pl. Dep. at 65).  The Magistrate found this statement is sufficient to meet the second and third elements, which requires that Plaintiff show she was subjected to unwelcome harassment based upon her sex.  (R&R at 27-28).  The parties do not object to these findings and recommendation, and the Court finds no plain error in it.

In further support of her hostile work environment claim, Plaintiff cites to a threat of suspension allegedly made by Fire Chief Edward O'Brien during a meeting with Plaintiff on February 1, 2013.  ([27] at 12-13).  The Magistrate Judge

found that this statement does not support the third element of Plaintiff's hostile

work environment claim, because Plaintiff failed to offer any evidence the threat

was made because of her sex.  The Magistrate Judge also determined that

Plaintiff's allegations of male employees defecating in the women's restroom, (Pl.

Dep. at 62-65), do not support the third element of her hostile work environment

claim because Plaintiff did not show that these actions were taken because of

Plaintiff's sex.  Plaintiff does not appear to object to the Magistrate Judge's

findings that Plaintiff failed to present evidence that O'Brien's alleged suspension

threat and the defecation incidents were based on Plaintiff's sex.[7]  The Court finds

no plain error in these findings.

The Magistrate Judge next determined that, even assuming the alleged

suspension threat and defecation incidents were based on Plaintiff's sex, Plaintiff

did not establish a *prima facie* case of hostile work environment because she

---

[7]     Plaintiff includes a heading titled "Objection to Magistrate's Error of
Determining Questions of Fact and/or Imposing Opinion as Hostile Work
Environment and Gender Discrimination," indicating a blanket objection to the
Magistrate Judge's determinations on her hostile work environment claim.  This
blanket objection is not a proper objection, and the Court will not consider it.  See
Marsden, 847 F.2d at 1548.  Under this heading, Plaintiff merely repeats that
"Plaintiff's fellow male officers would defecate in the women's bathroom and
refuse to flush to taunt her."  (Obj. at 8).  To the extent this statement intends to
object to the Magistrate Judge's determination, the Court is not persuaded by
Plaintiff's argument.  Plaintiff fails to offer any evidence that the instances of
defecation were based on Plaintiff's sex.

cannot show that the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment.  In her Objections, Plaintiff merely repeats the evidence she raised in response to Defendant's Summary Judgment Motion, and concludes that "the undisputed facts show that Plaintiff was targeted because she was the only woman and it was pervasive."  (Obj. at 8-9).  Plaintiff's conclusory argument is not a proper objection, and the Court declines to consider it.  See Marsden, 847 F.2d at 1548 ("Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court.").  The Court reviews for plain error the Magistrate Judge's determination that the harassment Plaintiff alleges was not sufficiently severe or pervasive to alter the terms and conditions of her employment.  See Slay, 714 F.2d at 1095.

    For sexual harassment to be actionable under Title VII, it "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).  In determining whether the sexual harassment was sufficiently hostile or abusive to affect a term, condition or privilege of employment, courts are to look at all the circumstances, including the

frequency and severity of the conduct.  See id.  Courts should also look at whether the conduct is "'physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Id. at 787-88 (citation omitted).  The Supreme Court has emphasized that Title VII "does not set forth a general civility code for the American workplace."  Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).  "'[S]imple teasing,' . . . offhand comments, and isolated incidents (unless extremely serious)" will not amount to a hostile work environment.  Faragher, 524 U.S. at 788 (citations omitted).

The Magistrate Judge found, even assuming the alleged suspension threat and defecation incidents were based on Plaintiff's sex, that the harassment Plaintiff alleges was not pervasive.  The Court agrees.  The alleged suspension threat happened once, and Plaintiff's testimony does not provide specifics about the frequency of the un-flushed toilets.  As the Magistrate Judge determined, these "allegations do not support a finding that the complained-of conduct was frequent as defined by Eleventh Circuit caselaw."  (R&R at 30).  The Court finds no plain error in these findings and recommendation.

The Magistrate Judge also found that Plaintiff failed to show that the alleged harassment was sufficiently severe for purposes of Title VII.  The Court also

24

agrees with this determination.  Title VII is violated only when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]"  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).  The Magistrate Judge determined that the un-flushed toilet incidents and the "cook and clerical work" comment were crude and unprofessional, but that they were neither physically threatening nor sufficiently humiliating.  (R&R at 32).  After a review of several Eleventh Circuit cases in which the court found harassment was sufficiently severe for Title VII purposes, the Magistrate concluded that Plaintiff's allegations are "mild compared to the facts in these Eleventh Circuit cases," and found that a reasonable factfinder could not conclude that Plaintiff's workplace atmosphere was permeated with discriminatory intimidation, ridicule, and insult. (Id. at 34).  The Court finds no plain error in these findings and recommendation. Because Plaintiff is unable to establish a *prima facie* case, Defendant's Motion for Summary Judgment is required to be granted on Plaintiff's gender-based hostile work environment claim.

Plaintiff also alleges that she was constructively discharged from her position.  ([1] ¶ 20; [27] at 6).  The Magistrate Judge determined that, "because

Plaintiff failed to meet even the standard for a hostile work environment, she

cannot, therefore, meet the higher standard for constructive discharge."  (R&R at

35 (citing Barrow v. Ga. Pac. Corp., 144 F. App'x 54, 59 (11th Cir. 2005))).  The

Court agrees.  See Menzie v. Ann Taylor Retail, Inc., 549 F. App'x 891, 894-95

(11th Cir. 2013) (holding that the standard for constructive discharge "requires a

plaintiff to show harassment that is more severe or pervasive than the minimum

level required to establish a hostile working environment").  The Court finds no

plain error in the Magistrate Judge's determination that Plaintiff fails to show that

she was constructively discharged from her position, and Defendant's Motion for

Summary Judgment is granted on Plaintiff's constructive discharge claim.

      3.    *Title VII Retaliation Claim*

Title VII acts to shield employees from retaliation for certain protected

practices.  It provides that:

> It shall be an unlawful employment practice for an employer to
> discriminate against any of his employees or applicants for
> employment . . . because he has opposed any practice made an
> unlawful practice by this subchapter, or because he has made a
> charge, testified, assisted, or participated in any manner in an
> investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

In Univ. of Tex. Sw. Med. Ctr. v. Nassar, ⎯ U.S. ⎯, ⎯, 133 S. Ct.

2517, 2534 (2013), the Supreme Court held that a plaintiff bringing a Title VII

retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."  The Eleventh Circuit has held that the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), continues to apply after Nassar.  See Mealing v. Ga. Dep't of Juvenile Justice, 564 F. App'x 421, 427 n.9 (11th Cir. 2014). Under this framework, the allocation of burdens and order of presentation and proof are as follows:  (1) the plaintiff has the burden of proving a *prima facie* case of retaliation; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, non-retaliatory reason for the action taken against the employee; and (3) should the defendant carry this burden, the plaintiff must have an opportunity to prove that the legitimate reason offered by defendant was a pretext for retaliation.  See McDonnell Douglas, 411 U.S. at 802-803.[8]

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that:  (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal link between the two.  Dixon

---

[8]    A plaintiff "may also prevail if she proves that her sex was a 'motivating factor' behind her termination, even if there were other, even legitimate, factors motivating that decision as well."  Chavez v. Credit Nation Auto Sales, LLC, ⸺ F. App'x ⸺, ⸺, 2016 WL 158820, at *4 (11th Cir. Jan. 14, 2016).

v. The Hallmark Cos., Inc., 627 F.3d 849, 856 (11th Cir. 2010).  The first *prima*

*facie* element requires Plaintiff to show that she engaged in protected expression,

two forms of which are recognized by Title VII.  "An employee is protected from

discrimination if (1) '[she] has opposed any practice made an unlawful

employment practice by this subchapter' (the opposition clause) or (2) '[she] has

made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under this subchapter' (the participation clause)."  Clover

v. Total Sys. Servs., Inc., 176 F.3d 1346, 1350 (11th Cir. 1999) (quoting 42 U.S.C.

§ 2000e-3(a)).

       Although not mentioned by Plaintiff in support of her retaliation claim, the

Magistrate noted that Plaintiff, on February 21, 2013, filed a complaint of

discrimination with DeKalb County and, on March 14, 2013, filed an EEOC

charge of discrimination.  (R&R at 16).  The Magistrate determined that these

complaints of discrimination are protected activity and satisfy the first *prima facie*

element.[9]  No party objects to this finding, and the Court finds no plain error in it.

---

[9]     Plaintiff argued that she is able to establish the first *prima facie* element
because she "participated in the investigation" into the October 2012 incident
involving EMT Christopher Roberts's allergic reaction to onions. ([27] at 21).  The
Magistrate Judge determined that Plaintiff's participation in the investigation does
not constitute activity protected under Title VII, because the participation "clause
protects proceedings and activities which occur in conjunction with or after the

The Magistrate determined that Plaintiff failed to establish the second

element of her *prima facie* case of Title VII retaliation, because she cannot show

that she suffered an adverse action after her February 21, 2013, discrimination

complaint or her March 14, 2013, EEOC charge.  (R&R at 16).  The only argument

Plaintiff offered in support of her retaliation claim is nonspecific argument that the

"severity of the treatment increased once the Plaintiff transferred to the station

where the captain in charge made it clear that he did not want females working at

his station."  ([27] at 21).  Plaintiff repeats this argument in her Objections.  (Obj.

at 7).  The Magistrate determined that "[t]his vague statement does not offer

sufficient facts to permit a reasonable jury to find that Plaintiff suffered an adverse

employment action."  (R&R at 17).  She also determined that "there is simply no

evidence cited by Plaintiff showing that the alleged treatment was causally

connected to her protected activity," the filing of her internal complaint on

_____

filing of a formal charge with the EEOC; it does not include participating in an
employer's internal, in-house investigation, conducted apart from a formal charge
with the EEOC."  EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir.
2000).  The Magistrate also reasoned that the investigation "had nothing to do with
any allegations of discrimination made unlawful by Title VII."  (R&R at 15).
Plaintiff does not appear to object to this finding.  Plaintiff merely repeats that
"[a]ll of the retaliatory actions came after the Plaintiff participated in the
investigation regarding her coworker."  (Obj. at 7).  The Court agrees with the
Magistrate Judge's determination that the internal investigation into the October
2012 incident does not qualify as protected activity under Title VII.

February 21, 2013, or the filing of her EEOC charge on March 14, 2013.  (Id. at

17-18).  The Court agrees.

In her Objections, Plaintiff relies on Bass v. Bd. of Cty Comm'rs, 256 F.3d

1095, 1118 (11th Cir. 2001) to argue that, in determining whether a plaintiff has

alleged an adverse employment action, the Eleventh Circuit requires that all of the

alleged conduct be considered collectively.  (Obj. at 6).  She fails, however, to

specify the alleged collective conduct she contends amounts to retaliation.  She

relies only on the unsupported conclusion that "there can be no doubt that the

Plaintiff suffered adverse employment actions."  (Id. at 6-7).

"An action is materially adverse if it 'might have dissuaded a reasonable

worker from making or supporting a charge of discrimination.'"  Perry

v. Rogers, ——F. App'x ——, ——, 2015 WL 5692236, at *8 (11th Cir. Sept. 29,

2015) (quoting Burlington, 548 U.S. at 68).  The Eleventh Circuit has "observed

that a set of actions may constitute an adverse employment action when considered

collectively, even though some actions do not rise to the level of an adverse

employment action individually."  Harris v. Fla. Agency for  Health Care Admin.,

611 F. App'x 949, 952 (11th Cir. 2015) (citing Shannon v. Bellsouth Telecomms.,

Inc., 292 F.3d 712, 716 (11th Cir. 2002)).  "An employee suffers a materially

adverse action when he receives an unfavorable performance review that affects

his eligibility for a pay raise." Id. (citing Crawford v. Carroll, 529 F.3d 961, 974 (11th Cir. 2008)).  "A supervisor's statement that the plaintiff failed to perform his job duties sufficiently does not constitute an adverse employment action when nothing in the memorandum indicates that the plaintiff was disciplined." Id. (citing Garrett v. Univ. of Ala at Birmingham Bd. of Trs., 507 F.3d 1306, 1309, 1316 (11th Cir. 2007)).

Here, the only specific adverse actions that took place after Plaintiff's statutorily protected activity—the filing of her internal complaint on February 21, 2013, or the filing of her EEOC charge on March 14, 2013—for which Plaintiff offers any evidence are:  Plaintiff's August 21, 2013 resignation from DCFR, which she claims to be a constructive discharge, and the denial of back pay after her resignation.  Courts in the Eleventh Circuit have either assumed or decided that a constructive discharge may constitute an adverse employment action for purposes of showing retaliation.  See Bartolon-Perez v. Island Granite & Stone, Inc., 108 F. Supp. 3d 1335, 1340 (S.D. Fla. June 10, 2015) (collecting cases).  As explained above, however, Plaintiff fails to present evidence to meet the high standard for a constructive discharge claim.  Plaintiff thus cannot sustain a claim of

31

retaliation based on her alleged constructive discharge.[10]  See Tzoc v. M.A.X.
Trailer Sales & Rental, Inc., No. 13-23859-CIV, 2015 WL 2374594, at *9-13 (S.D.
Fla. May 18, 2015) (granting summary judgment on plaintiff's retaliation claim
alleging constructive discharge where the facts asserted did not rise to the level of
a constructive discharge); Wonders v. United Tax Group, LLC, No. 13-80148-
CIV, 2013 WL 5817589, at *6 (S.D. Fla. Oct. 29, 2013) (same); see also
Birl-Johnson v. Regions Bank, No. 2:14cv1059-MHT, 2015 WL 5317013, at *6
(M.D. Ala. Sept. 11, 2015) (dismissing retaliation claim where Plaintiff failed to
adequately allege that she was constructively discharged).

     Even if Plaintiff could meet the standard for constructive discharge or if she
could show that some other set of acts amounted to an adverse employment
action—which she cannot—Plaintiff still would fail to establish her *prima facie*
case of retaliation because she cannot show a causal connection between her
statutorily protected activity and the materially adverse actions.  The Court agrees
with the Magistrate Judge that "there is simply no evidence cited by Plaintiff
showing that [her] alleged treatment was causally connected to her protected

---

[10]     Plaintiff also has not presented facts to establish a genuine issue of material
fact that she was entitled to receive back pay after her resignation.

activity." (R&R at 17).[11]  Indeed, the bulk of Plaintiff's purported negative

treatment occurred prior to her statutorily protected activity, and Plaintiff fails to

show any evidence linking her alleged mistreatment to her statutorily protected

activity.[12, 13]  The Court finds that Plaintiff fails to establish a *prima facie* case of

retaliation under Title VII.[14]

---

[11]     In her Objections, Plaintiff asserts that "[a]ll of the retaliatory actions came
after the Plaintiff participated in the investigation regarding her coworker." (Obj.
at 7).  As stated above, the Magistrate Judge determined, and the Court agrees, that
Plaintiff's participation in the investigation was not a statutorily protected activity.
She further argues that the "severity of the treatment increased once the Plaintiff
was transferred to the station where the captain in charge made it clear that he did
not want females working at his station." (Id.).  Plaintiff's transfer, however, took
place well before her statutorily protected activity.  Again, Plaintiff fails to offer
any evidence even suggesting a causal connection between her statutorily protected
activity—the filing of her internal complaint on February 21, 2013, or the filing of
her EEOC charge on March 14, 2013—and any purported adverse actions.

[12]     Plaintiff also argues that "Defendant has not provided any legitimate,
non-discriminatory reason for all retaliatory acts." (Obj. at 6).  But Defendant is
not required to provide legitimate reasons until Plaintiff establishes her *prima facie*
case, which she has failed to do.  See McDonnell Douglas, 411 U.S. at 802-803.

[13]     Even if her "constructive discharge" or failure to receive back pay were
adverse employment actions, Plaintiff cannot show causation because there is no
temporal proximity between her statutorily protected activity and these actions, and
other evidence of causation is lacking.  See Thomas v. Cooper Lighting, Inc., 506
F.3d 1361, 1364 (11th Cir. 2015) (holding that a 3 to 4 month period between the
statutorily protected expression and the adverse employment action, without more
evidence, is not enough to establish causation).

[14]     Although Plaintiff does not explicitly raise the claim, the Eleventh Circuit
also has held that a retaliatory hostile work environment is a cause of action under
Title VII.  Gowski v. Peake, 682 F.3d 1299, 1312 (11th Cir. 2012).  The plaintiff
must show that the actions committed against her "were sufficiently severe or

Accordingly, Defendant's Motion for Summary Judgment is granted on Plaintiff's retaliation claims.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Kiesha Cheatham's Objections [34] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Magistrate Judge Janet F. King's Final Report and Recommendation [32] ("R&R") is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant DeKalb County, Georgia's Motion for Summary Judgment [24] is **GRANTED**.

---

pervasive to alter the terms and conditions of employment" in order to establish a retaliatory hostile work environment.  Id.

    Here, the evidence Plaintiff presents falls far short of the standard articulated in Gowski, even taking into account the actions Plaintiff argues took place *prior* to her statutorily protected activity.  More importantly, there is no evidence that "the administration intended to retaliate against [Plaintiff] because of [her] EEO activity and then created a hostile environment . . . ."  Gowski, 682 F.3d at 1313; see also Redd v. United Parcel Serv., Inc., 615 F. App'x 598, 607 (11th Cir. 2015) (affirming summary judgment where plaintiff "failed to show a causal connection between his protected activity and the alleged adverse employment action.").

**SO ORDERED** this 8th day of February, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE